243 N.J. Super. 65 (1990)
578 A.2d 882
COALITION OF CONCERNED NURSES, APPELLANT,
v.
NEW JERSEY DEPARTMENT OF HIGHER EDUCATION, NEW JERSEY BOARD OF HIGHER EDUCATION, NEW JERSEY STATE BOARD OF NURSING, AND UNIVERSITY OF MEDICINE AND DENTISTRY OF NEW JERSEY, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued July 16, 1990.
Decided July 31, 1990.
*67 Before Judges DREIER and D'ANNUNZIO.
Pamela Mandel argued the cause for appellant.
Katherine L. Suga, Deputy Attorney General, argued the cause for New Jersey Department of Higher Education, New Jersey Board of Higher Education, and University of Medicine and Dentistry of New Jersey (Robert J. Del Tufo, Attorney General of New Jersey, attorney).
Kathryn S. Schwed, Deputy Attorney General, argued the cause for New Jersey State Board of Nursing (Robert J. Del Tufo, Attorney General of New Jersey, attorney).
Gordon J. Golum argued the cause for Intervenor-Respondent, Middlesex County College (Wilentz, Goldman & Spitzer, attorneys).
Evan William Jahos argued the cause for amicus curiae New Jersey State Nurses Association (Jahos, Broege & Shaheen, attorneys).
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
*68 The issue in this accelerated appeal is whether the University of Medicine and Dentistry of New Jersey (University) is statutorily authorized to confer an Associate of Science degree with a major in nursing. The degree is to be conferred jointly with Middlesex County College (MCC) pursuant to a Memorandum of Understanding between MCC and the University. Appellant and the amicus, New Jersey State Nurses Association, contend that N.J.S.A. 18A:64G-3.2 (hereinafter § 3.2) prohibits the University from conferring undergraduate degrees. Section 3.2 provides:
It is declared to be the public policy of the State that the use of the title university by the College of Medicine and Dentistry of New Jersey does not imply a future change in its institutional mission to permit the granting of undergraduate degrees or the expansion of its graduate degree programs beyond the biomedical science fields now authorized.
It was adopted in 1981 as part of chapter 325 which amended the Medical and Dental Education Act of 1970 (the 1970 Act).[1]
Respondents contend that § 3.2 does not prevent the granting of undergraduate degrees in "the biomedical science fields." In effect, respondents argue that the phrase "beyond the biomedical science fields" in § 3.2 modifies the phrase "undergraduate degrees" as well as the phrase "graduate degree programs." Respondents also contend that § 3.2 does not preclude the University's participation in a joint undergraduate degree program with another institution of higher education.
In construing a statute we must give effect to the legislative intent. Monmouth County v. Wissell, 68 N.J. 35, 342 A.2d 199 (1975). Sources of that intent are the language of a statute, the policy behind a statute, concepts of reasonableness and legislative history. Shapiro v. Essex County Freeholder *69 Board, 177 N.J. Super., 87, 424 A.2d 1203 (Law Div. 1980), aff'd. 183 N.J. Super. 24, 443 A.2d 219 (App.Div. 1982), aff'd 91 N.J. 430, 453 A.2d 158 (1982); Coletti v. Un. Co. Freeholders, 217 N.J. Super. 31, 524 A.2d 1270 (App.Div. 1987).
Prior to the 1981 amendments the 1970 Act did not contain an express limitation on the University's power to confer undergraduate degrees. The 1970 Act stated that the Legislature and the Governor found "that the establishment and operation of a program of medical and dental education is in the best interest of the State to provide greater numbers of trained medical personnel to assist in the staffing of the hospitals and public institutions and agencies of the State and to prepare greater numbers of students for the general practice of medicine and dentistry...."[2]L. 1970, c. 102, § 2; N.J.S.A. 18A:64G-2. The 1970 Act empowered the Board of Trustees to "[d]etermine the educational curriculum and program of the college" and to "[g]rant diplomas, certificates or degrees." L. 1970, c. 102, § 6(b) and (k); N.J.S.A. 18A:64G-6(b) and (k). The trustees were also authorized to exercise implied powers and powers "incident to the proper government, conduct and management of the college...." L. 1970, c. 102, § 7; N.J.S.A. 18A:64G-7. Although the statutes are not without ambiguity, the primary purpose of the 1964 and 1970 Acts was to establish an institution to educate and train physicians and dentists.
We must construe § 3.2 to resolve the issue in this case. Section 3.2's structure strongly suggests that the phrase "beyond the biomedical science fields" modifies only "the expansion of its graduate degree programs." The legislative history supports this construction of § 3.2. The statement of the Senate Education Committee to the bill that became chapter 325 *70 indicates that the bill's purpose was to provide "for a greater degree of administrative autonomy for the College of Medicine and Dentistry of New Jersey." Despite this avowed purpose, the Senate Education Committee expressed its intent that the University's mission
is, and shall continue to be, the offering of the graduate degrees programs in the biomedical science fields now authorized or authorized in the future by the State Board of Higher Education. Moreover, the committee endorses the State Board resolution of June 19, 1981 which states, "that it is in the best interests of a coordinated and effective system of higher education that the [University] not offer undergraduate degrees."
The State Board of Higher Education (State Board) resolution of June 19, 1981, referred to by the Senate Education Committee, contained two paragraphs particularly pertinent to this appeal:
RESOLVED: That the Board unequivocally affirms its position that the use of a "university" title by the CMDNJ does not imply a future change in its institutional mission to permit the granting of undergraduate degrees or the expansion of its graduate degree programs beyond the biomedical science fields now authorized; and be it further
RESOLVED: That in accordance with the principles outlined in the recently adopted Statewide Plan for Higher Education, and the 1978 study on the Future Scope and Cost of Health Professions Education, the Board of Higher Education states that it is in the best interests of a coordinated and effective system of higher education that the CMDNJ not offer undergraduate degrees.
The first paragraph is the source of § 3.2's language. The second paragraph explains the first paragraph by stating "that the CMDNJ not offer undergraduate degrees."
The State Board's resolution relied in part on the 1981 Statewide Plan for Higher Education and on the June 18, 1981 memorandum (the memorandum) from its Special Committee on CMDNJ Operational Flexibility. The memorandum stated in part that the committee "could not accept the original proposal to change the College's name to the New Jersey Health Sciences University given the fact that the College is not authorized to grant undergraduate degrees in the health professions." The memorandum did express support for the amendment which would change the college's name to The University of Medicine and Dentistry of New Jersey but stated that

*71 while we support the proposed name change, we share the higher education community's concern that the use of the word "university" in the institution's name should not be interpreted to imply the right to grant undergraduate degrees or to expand graduate degree offerings beyond the biomedical science fields now authorized. Such an implication is clearly at odds with the Board of Higher Education's position concerning the appropriate mission for the CMDNJ. Therefore, in order to properly and forcefully address this valid concern, we recommend that the Board of Higher Education clearly and publicly affirm its position that the use of a "university" title of CMDNJ does not imply a future change in its institutional mission to permit the granting of undergraduate degrees or to expand its graduate degree offerings in the biomedical sciences.
We therefore conclude that the phrase "beyond the biomedical science fields now authorized" does not modify the prohibition against "the granting of undergraduate degrees."
However, respondents' contention that the University may participate in joint undergraduate degree programs with other institutions presents a closer question.
The impetus to amend the 1970 Act came from the University with State Board support. Thus, the University and the State Board jointly crafted chapter 325. Moreover, the State Board authored § 3.2 in reliance on the memorandum of its special committee and on the 1981 Statewide Plan for Higher Education. Consequently, the Board, its special committee and the Statewide Plan are rich sources of material for a complete understanding of § 3.2's impact.
The memorandum stated that the committee's recommendations were based upon certain "guiding observations and precepts," including the observation that
Through its School of Allied Health Professions, the CMDNJ shares responsibility for allied health professions education with two- and four-year colleges throughout the State, although the College itself is not authorized to grant undergraduate degrees. [Emphasis supplied.]
The committee identified, with approval, the role of the School of Allied Health Professions as one of the four major components of "the College's institutional mission."
The Statewide Plan commented extensively and favorably on the College's joint degree programs. It noted that the College "[t]hrough its School of Allied Health Professions ... engages *72 in joint programs with degree-granting colleges in areas of allied health education," State of New Jersey Board of Higher Education, The Statewide Plan for Higher Education, 1981, p. 34, and stated:
The CMDNJ also shares responsibility for allied health professions education with two and four year colleges throughout the State. In addition to the administration of CMDNJ's own hospital-based certificate programs, the School of Allied Health Professions was established to create a core of administrative, curriculum planning, and instructional services at CMDNJ aimed at maximizing regional coordination and sharing of resources through the development of joint programs with other collegiate institutions. The concept of cooperative arrangements between CMDNJ and two and four year colleges was developed to avoid duplication and fragmentation of educational effort, to foster the creation of educational programs that permit upward and lateral career mobility, and to use the clinical resources at CMDNJ more efficiently by offering joint programs in the health professions. [Id. at p. 35.]
Finally, the Statewide Plan expressed its conclusions regarding the College's mission:
As the State's only public medical and dental school, the CMDNJ should carry out its mission in the following ways.
1. The College should continue to provide programs for the professional education of physicians and dentists and should offer first professional degrees in medicine and dentistry.
2. It should continue to provide, through its Graduate School of Biomedical Sciences, graduate and postgraduate programs focused on human medicine. CMDNJ and Rutgers University should continue their joint degree programs and should develop formal agreements defining the relationship between programs conducted by the respective institutions in related fields, particularly those offered in the Newark area, with a view toward avoiding duplication of efforts and sharing resources.
3. The CMDNJ should continue its programs of continuing education for physicians, dentists, and allied health professionals except in the areas of pharmacy and social work.
4. It should continue to assume its role as a major center for research in the biomedical sciences and, as such, should aggressively seek outside funds for the support of such research and for the recruitment of outstanding scientists.
5. The College should continue to recognize its position as a major provider of health care in areas of need, including the development of tertiary referral centers, and its commitment to the training of practitioners, particularly in primary care fields.
6. The CMDNJ should continue to offer programs of education and training in selected allied health professions as outlined by the Health Professions Education Master Plan of the State of New Jersey. This should be *73 accomplished primarily through joint programs with two and four year colleges and general university campuses in the State.

7. The CMDNJ should not, itself, offer undergraduate degree programs. [Id., at pp. 35-36; emphasis supplied.]
These sources establish that joint programs with two and four-year colleges and universities constituted an important segment of the University's mission as perceived by the State Board at the time it drafted § 3.2. We are also satisfied that the use of the word "itself" in the Statewide Plan and by the special committee to describe the restriction on the granting of undergraduate degrees was designed to differentiate the University acting alone from its acting through joint programs with other schools.[3]
We conclude that § 3.2 prohibits the granting of undergraduate degrees in any field by the University acting alone, but does not preclude the University's participation in joint degree programs in collaboration with other colleges and universities. In this manner the Legislature substantially mitigated the "higher education community's concern"[4] regarding competition from the University while allowing appropriate use of the University's resources and expertise.
The context of § 3.2's adoption supports our conclusion. As previously indicated, the 1970 Act did not expressly prohibit the granting of undergraduate degrees. Section 3.2 was adopted because chapter 325 changed the school's name from College to University. The education community became concerned that *74 the term "University" might connote enhanced degree-granting authority. Section 3.2 was drafted to allay those concerns. It expressly states that the new title "does not imply a future change in its institutional mission to permit the granting of undergraduate degrees...." (Emphasis supplied.) Thus, § 3.2 does not expressly or impliedly prohibit or disapprove of the college's programs in existence as of the day § 3.2 was enacted. As we have seen, some of those programs were joint undergraduate degree programs.
The program at issue is a joint degree program offered by MCC and the University's School of Health Related Professions. The program is comprised of general education courses and nursing courses at the MCC campus. University faculty will teach only the nursing courses. The Memorandum of Understanding contains other provisions regarding the program's administration. Based on our review of it we are satisfied that as a joint degree program it is within the University's statutory authority.
The State Board of Higher Education's resolution of April 27, 1990 authorizing the joint program and the provisional accreditation of the New Jersey State Board of Nursing is affirmed.[5]
NOTES
[1] L. 1970, c. 102. The 1970 Act combined Rutgers Medical School and the New Jersey College of Medicine and Dentistry into a single entity to be known as the College of Medicine and Dentistry of New Jersey. Chapter 325 substituted "University" for "College."
[2] As previously indicated, the 1970 Act was adopted to combine Rutgers Medical School and the New Jersey College of Medicine and Dentistry which had been created in the 1960's to acquire a medical school from Seton Hall University. New Jersey Medical and Dental College Act of 1964, L. 1964, c. 231.
[3] A 1978 study of health professions in education in New Jersey also utilized the word "itself" in this context: "Currently the CMDNJ-SAHP conducts 14 allied health programs including five offered jointly with two and four-year colleges. It is not itself, authorized to grant academic degrees." New Jersey State Department of Higher Education, A Study Of The Future Scope And Cost Of Health Professions Education in New Jersey, October 1978, p. 131; emphasis supplied. The study also stated that of the 14 programs five were "degree programs offered in conjunction with various New Jersey colleges." Id. at p. 141.
[4] Memorandum, Board of Higher Education Special Committee on CMDNJ Operational Flexibility, recommendation 5, p. 4.,
[5] Respondents also contended in their brief that appellants lacked standing. We deem the contention to be without merit.