254 N.J. Super. 411 (1991)
603 A.2d 959
IN RE THE APPLICATION OF TOWNSHIP OF HOWELL, MONMOUTH COUNTY, TO DISSOLVE THE HOWELL TOWNSHIP MUNICIPAL UTILITIES AUTHORITY.
HOWELL TOWNSHIP MUNICIPAL UTILITIES AUTHORITY, A MUNICIPAL UTILITIES AUTHORITY OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
MAYOR AND TOWNSHIP COMMITTEE OF THE TOWNSHIP OF HOWELL, MONMOUTH COUNTY, NEW JERSEY; AND TOWNSHIP OF HOWELL, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 25, 1991.
Decided May 24, 1991.
*413 Before Judges J.H. COLEMAN, DREIER and ASHBEY.
Brian J. Molloy argued the cause for appellant (Wilentz, Goldman & Spitzer, attorneys; John A. Hoffman and Brian J. Molloy, of counsel; John A. Hoffman, Brian J. Molloy, Kenneth M. Denti and Hesser G. McBride, Jr., on the brief).
Edward J. Buzak argued the cause for respondents Mayor and Township Committee of the Township of Howell and the Township of Howell (Edward J. Buzak, attorney, and of counsel; Edward J. Buzak and Robert B. Campbell on the brief).
Robert J. Del Tufo, Attorney General of New Jersey, attorney for respondent Local Finance Board, filed a Statement in Lieu of Brief (Daniel P. Reynolds, Deputy Attorney General, on the Statement).
The opinion of the court was delivered by COLEMAN, J.H., P.J.A.D.
*414 This is an appeal from a final decision dissolving the Howell Township Municipal Authority (Authority). We affirm.
The Authority was created by Howell Township (Township) in November 1980 to provide for an adequate supply and distribution of potable water and the collection and disposal of sewage for its residents. At its peak, the Authority serviced about 5,688 sanitary sewer customers and about 5,149 potable water customers who comprised the ratepayers. Other residents in the Township were serviced by four private sewer and water companies, or their own wells and septic tanks.
By 1988, the Authority had incurred indebtedness of approximately $58 million, largely for capital projects relating to the potable water system. Faced with this huge debt, the Township formed a committee in June 1988 to study dissolution of the Authority. The study committee examined whether the Authority could be dissolved without the Authority's consent and what would be the financial and nonfinancial impact of a dissolution.
On September 5, 1989, the Township introduced three ordinances designed to dissolve the Authority. The first ordinance provided for the dissolution, the second provided for refunding the Authority's debts, and the third provided for the creation of a self-liquidating water and sewer department within the Township's governmental structure. Prior to the adoption of the ordinances, however, the Township filed an application seeking approval of the ordinance from the Local Finance Board (Board) in the Department of Community Affairs on September 18, 1989, as required by N.J.S.A. 40A:5A-20. The matter was thereafter referred to the Office of Administrative Law as an uncontested case at the Authority's request. Hearings were conducted over a five-day-period in which the Authority fully participated.
Administrative Law Judge Robert S. Miller issued his Initial Decision on January 30, 1990. The ALJ concluded that

*415 the Township has met its burden of proving that (1) the proposed ordinances make adequate provision for the payment of all creditors or obligees of the Authority, and (2) the Township has made adequate provision to assume those services now provided by the Authority which are necessary for the health, safety and welfare of the recipients thereof. In accordance with N.J.A.C. 1:1-21.5(a) and with N.J.S.A. 40A:5A-20, I therefore recommend that the application of Howell Township to dissolve the HTMUA be APPROVED.
On February 20, 1990, the Board adopted the findings and recommendations of ALJ Miller. The Board found that the Township had satisfied all of the requirements of N.J.S.A. 40A:5A-20, and it approved the Township's three ordinances and its application to dissolve the Authority as well. The Township formally adopted the three ordinances on February 26, 1990, dissolving the Authority.
Within two weeks thereafter, the Authority filed a complaint in the Law Division in lieu of prerogative writs. Shortly thereafter, a notice of appeal from the decision of the Board was filed. Once the notice of appeal was filed, the Law Division action was transferred to the Appellate Division. The two matters have been consolidated. However, an order entered on March 13, 1990 in the Law Division restraining the Township from issuing any refunding bonds or from interfering with the day-to-day operations of the Authority remains in effect.
The Township contends that the Authority lacks standing to pursue these appeals and to oppose its dissolution because dissolution does not "harm" the Authority since it is a creature of the Township and exists at its pleasure. The Township contends that the only harm that might result from such a dissolution pursuant to N.J.S.A. 40A:5A-20 is to the Authority's creditors and customers.
The Authority, on the other hand, contends that it does have standing because a dissolution extinguishes its very existence. It further asserts that it has standing by virtue of the fact that it is empowered by the Legislature with the right to sue and be sued.
*416 Generally, standing requires that a litigant have a sufficient stake and real adverseness with respect to the subject matter of the litigation, and a substantial likelihood that some harm will fall upon it in the event of an unfavorable decision. In re N.J. Bd. of Pub. Util., 200 N.J. Super. 544, 556, 491 A.2d 1295 (App.Div. 1985). Here, the Authority has both a sufficient stake with respect to the subject matter of the litigation, and a substantial likelihood of harm, because its very existence is at issue in this case. If the Township is successful then the Authority will be dissolved, by any measure a harmful result to it as a corporate entity. As the Authority points out, this harm was evident to Judge Selikoff who issued temporary restraints in the prerogative writs action.
The Township unduly restricts the application of the "harm" standard by arguing that only creditors and customers of the Authority would suffer harm as a result of the Authority's dissolution. This attempt by the Township to transpose the "adequate provision" requirements of N.J.S.A. 40A:5A-20 into a test for standing finds no support in the statute or the case law. Similarly, the Township's assertion that a municipal utilities authority does not have the statutory power to contest its dissolution is contradicted by N.J.S.A. 40:14B-20(2), which empowers a municipal authority to sue and to be sued.
The Township's reliance on Washington Tp. Zoning Bd. v. Washington Tp. Planning Bd., 217 N.J. Super. 215, 525 A.2d 331 (App.Div.), certif. den., 108 N.J. 218, 528 A.2d 36 (1987), is misplaced. There, the court held that a zoning board had no standing to sue a planning board on the ground that the planning board's grant of a special reasons variance was ultra vires. Id. at 220, 525 A.2d 331. The court noted that there was no specific provision in the Municipal Land Use Law for the zoning board to sue to enforce provisions of the act. Id. at 220-221, 525 A.2d 331. Rather, we pointed out that such power is vested exclusively with the governing body and an interested party, neither of which applies to a zoning board. Id. at 221, 525 A.2d 331. In contrast, here, the issue is not an entity's *417 right to sue another entity under the Municipal Land Use Law; instead, it is the right of a municipal utility to challenge a municipality's attempt to dissolve it. Our careful study of N.J.S.A. 40A:5A-20 convinces us that the Legislature did not intend to restrict the municipality's right. Consequently, the general rules of standing discussed supra, sufficient stake, real adverseness and a substantial likelihood of harm, are applicable. Under the general standing rules, we hold that the Authority has standing to pursue these appeals.
Now we turn our attention to the Authority's contentions. It argues that the failure of the Board to consider the financial impact upon the ratepayer of the Authority's proposed dissolution violated N.J.S.A. 40A:5A-20. It asserts that this failure violated the statute because without considering the impact upon the ratepayer, the Board could not conclude that the ordinance dissolving the Authority made "adequate provision" for the assumption of services necessary for the health, safety and welfare of the recipients of such services, as required by the statute. Additionally, the Authority contends that the failure to consider the impact upon the ratepayer rendered the Board's decision arbitrary because it is unsupported by sufficient credible evidence.
We reject these contentions essentially for the same reasons advanced by the ALJ. The ALJ under the heading "Miscellaneous Objections," noted that the Authority objected to the proposed dissolution on the ground that it would be detrimental to the ratepayer. The ALJ found this objection (along with several others), whether or not meritorious, to be irrelevant because the focus of the inquiry under N.J.S.A. 40A:5A-20 is "a relatively narrow one," namely, whether the Township made adequate provision for the payment of creditors and for the assumption of necessary services.
The Local Authorities Fiscal Control Law (Fiscal Law), N.J.S.A. 40A:5A-1 et seq., vests in the Board the power to oversee the creation, financing and dissolution of local authorities. *418 Browning-Ferris v. City of Passaic, 116 N.J. 83, 92-93, 560 A.2d 1208 (1989). The act, enacted in 1983, sought to promote the financial integrity and stability of local authorities by providing State review of project financing and for State supervision over the financial operations of local authorities. N.J.S.A. 40A:5A-2. The clear intent of the Fiscal Law was to strengthen the credit standing of municipalities, thereby increasing the overall attractiveness of their obligations within the financial community. Stone v. Old Bridge Tp., 111 N.J. 110, 119-120, 543 A.2d 431 (1988).
The act establishes two procedures for dissolving an existing local authority: under N.J.S.A. 40A:5A-21, due to financial difficulties or mismanagement; and, under N.J.S.A. 40A:5A-20, upon passage of an ordinance by the municipality as occurred here. N.J.S.A. 40A:5A-20 specifically provides in pertinent part:
Notwithstanding the provisions of any law to the contrary, the governing body of a local unit which has established an authority shall have the power and is authorized by ordinance in the case of a municipality ... to dissolve the authority, except that the ordinance or resolution, as the case may be, shall be approved by the Local Finance Board prior to adoption.... The Local Finance Board shall approve the dissolution if it finds that the ordinance or resolution makes adequate provision in accordance with a bond resolution or otherwise for the payment of all creditors or obligees of the authority and that adequate provision is made for the assumption of those services provided by the authority which are necessary for the health, safety and welfare of the recipients of those services.
"It is clear from this statutory framework that the Legislature intended that local authorities, indebted by interim financing or permanent bonding, may be dissolved only under carefully circumscribed instances." Howell Tp. v. Manasquan River Regional Sewerage Auth., 215 N.J. Super. 173, 180, 521 A.2d 858 (App.Div. 1987). The Authority now seeks to add a requirement for dissolution not set forth by the "carefully circumscribed instances" of the statute. The statute specifically requires that the Board find that adequate provision is made for the assumption of services necessary for the health, safety and welfare of the recipients of such services. We are satisfied *419 that adequate provision for services and financial impact on the ratepayer are not synonymous. Had the Legislature wanted to include the latter as a requirement for dissolution, it clearly had the opportunity to do so. Our function is to enforce the legislative will as expressed by the clear language of the statute, not to presume the Legislature intended something other than what it expressed by its plain language. In re Jamesburg High School Closing, 83 N.J. 540, 548, 416 A.2d 896 (1980). Because we conclude that the Board was not required to consider the impact dissolution would have on the ratepayer, the decision of the Board was not arbitrary, capricious or unreasonable. Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93, 312 A.2d 497 (1973).
We have considered the remaining contentions raised, and we find they are clearly without merit. R. 2:11-3(e)(1)(D). We add, however, that the two-year notice provision in the service agreement between the Township and the Authority deals only with termination of the agreement and has no application to a dissolution of the Authority pursuant to N.J.S.A. 40A:5A-20. In any event, it is doubtful that a municipality can contract away powers granted it by the Legislature. See Palisades Properties, Inc. v. Brunetti, 44 N.J. 117, 133, 207 A.2d 522 (1965).
We affirm the decision of the Board substantially for the reasons expressed in its decision which adopted the findings and recommendations contained in the ALJ's Initial Decision. All restraints imposed in the Law Division action are vacated.
Affirmed.